OPINION OF THE COURT
Daniel Conviser, J.
The respondent is the subject of a petition for sex offender civil management pursuant to the Sex Offender Management and Treatment Act (SOMTA) (Mental Hygiene Law art 10, as added by L 2007, ch 7 [eff Apr. 13, 2007]). He moves here to dismiss the petition on the basis that certain provisions of the statute as applied to him are violative of the United States and New York State Constitutions. For the reasons stated below, respondent’s motion is denied.[1]
*717 Statement of Facts
On May 3, 1995, the respondent was sentenced in New York County Supreme Court for convictions of kidnapping in the second degree, promoting prostitution in the second degree and bail jumping in the first degree. He received concurrent indeterminate sentences of 9 to 18 years’ incarceration on the kidnapping charge, 4 to 8 years on the promoting prostitution charge and 3 to 6 years on the bail jumping charge. According to the State, respondent’s kidnapping and promoting prostitution charges included conduct in which he restrained the victim, repeatedly raped her, forced her to engage in prostitution, beat her and forced her to ingest narcotics. These acts allegedly occurred in 1992. The respondent also has prior convictions for unlawful imprisonment, attempted assault and forcing a person to engage in prostitution.
A sex offender civil management petition was filed in Greene County Supreme Court on December 3, 2009 and an amended petition was filed in New York County Supreme Court on December 18, 2009. The respondent was in Department of Correctional Services (DOCS) custody pursuant to his sentence at the time of the filing of the initial petition and has been in DOCS or Office of Mental Health custody since that time. On February 17, 2010, Acting Greene County Supreme Court Justice George Pulver found that there was probable cause to believe that the respondent was a detained sex offender who suffered from a mental abnormality. The venue of the instant proceeding was subsequently transferred to this court where the respondent is awaiting trial.
Conclusions of Law
Statutory Background
Article 10 of the Mental Hygiene Law creates a comprehensive system to subject certain sex offenders to indefinite civil confinement or indefinite strict and intensive supervision and treatment. The challenges made here concern a unique category of sex offenses which was created for the first time in New York law by SOMTA and which are denominated as “sexually motivated” felonies. A “sexually motivated” felony is one of a list of nonsexual felonies including, for example, a robbery, burglary or kidnapping which “[was] committed in whole or in *718 substantial part for the purpose of direct sexual gratification of the actor.” (Mental Hygiene Law § 10.03 [s].)
The chapter which enacted SOMTA provided that an offender convicted of a felony which was sexually motivated could be subject to sex offender civil management. But the Act also, separately, created a new category of criminal offense called sexually motivated felony under a definition which is substantively identical to that provided by the Mental Hygiene Law. These new criminal provisions apply only to crimes committed after the Act’s effective date (April 13, 2007). The consequence of being convicted of a “sexually motivated” felony under the Penal Law is that the offense is treated as a sex crime for sentencing purposes, rather than a nonsexual offense. This can have the effect of increasing an offender’s terms of incarceration and postrelease supervision. (See L 2007, ch 7, § 29; Penal Law §§.130.91, 130.92, 70.80, 70.45.)
Persons alleged to have been convicted of designated felonies which are sexually motivated may be subject to civil management under two distinct provisions of the statute. First, an offender who “stands convicted of a sex offense” (which under the operative definition of a sex offense includes a designated felony which is sexually motivated) can be subject to civil management if he is currently serving a sentence for such an offense or a “related offense” (a defined term under the statute). (Mental Hygiene Law § 10.03 [g] [1].) This provision applies only to conduct which occurs subsequent to SOMTA’s effective date. Offenders who stand convicted of sexually motivated designated felonies under the Penal Law are treated under SOMTA in the same way as any other convicted sex offender.
But offenders can also be subject to civil management under a second unique provision of the statute. A person “who stands convicted of a designated felony that was sexually motivated and committed prior to the effective date of this article” (article 10) may also be subject to civil management. (Mental Hygiene Law § 10.03 [g] [4].) Such offenders must be convicted of a designated felony like robbery, burglary or kidnapping to be SOMTA eligible. But since “sexually motivated” crimes did not exist prior to SOMTA’s effective date, such offenders, of necessity, could not possibly have been convicted of a sexually motivated crime which was committed before SOMTA’s effective date. To address these prior cases, SOMTA provides that the jury which determines whether the respondent suffers from a “mental abnormality” must also determine whether a *719 respondent’s previous conviction for a designated felony was sexually motivated. (Mental Hygiene Law § 10.07 [c].)
These two different methods of proving sexual motivation (at an article 10 trial for offenders convicted prior to April 13, 2007 and in a criminal trial for offenders convicted after that date) also result in two different standards of proof being used to determine whether a designated felony was sexually motivated. For crimes committed prior to April 13, 2007, sexual motivation must be proven by clear and convincing evidence (since it is part of the article 10 trial determination). (See Mental Hygiene Law § 10.07 [d].) For crimes occurring after that date, the sexual motivation component of a designated felony must be proved beyond a reasonable doubt (the standard of proof in a criminal trial) because such determinations must, of necessity, have been made in a criminal proceeding.
The statute of limitations applicable to proof of sexual motivation also varies depending upon whether a designated felony was committed prior to or after SOMTA’s effective date. For crimes committed prior to SOMTA’s effective date, there is no statute of limitations which is imposed for proving the sexual motivation of a designated felony. In contrast, since sexually motivated crimes which occur after SOMTA’s effective date must be proved in a criminal proceeding, the sexual motivation component of those crimes, along with all of the other aspects of such charges, is subject to normal criminal statute of limitations provisions. Such crimes must thus generally be prosecuted within five years of their occurrence, with certain exceptions. (See CPL 30.10 [2] [b].)
Respondent’s Constitutional Claims
The respondent first asserts that the designation of a nonsexual offense committed prior to the effective date of SOMTA as sexually motivated violates the Ex Post Facto Clause of the United States Constitution. Article I, section 9 (3) of the United States Constitution provides that “[n]o ... ex post facto Law shall be passed” but does not otherwise elaborate on that prohibition. The United States Supreme Court has defined an ex post facto law as:
“any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed” *720 (Collins v Youngblood, 497 US 37, 42 [1990], quoting Beazell v Ohio, 269 US 167, 169 [1925].)
In Kansas v Hendricks (521 US 346 [1997]), the United States Supreme Court rejected a claim that the Kansas civil commitment statute, which bears significant similarities to New York’s SOMTA statute, was an unconstitutional ex post facto law. Respondent seems to acknowledge that the Hendricks decision would foreclose a general challenge to the constitutionality of New York’s SOMTA statute on ex post facto grounds. He argues, however, that the retroactive designation of an offender’s prior nonsexual offense conviction as a sexually motivated felony would be violative of the ex post facto prohibition. Such a retroactive classification of a non-sex offense as a sexually motivated felony was not a feature of the Kansas statute which was upheld in Hendricks.
As the respondent points out, the analysis of whether a statute imposes retroactive punishment in violation of the Ex Post Facto Clause is a two-step inquiry. First, a court must determine whether a legislature intended to establish a civil proceeding. “If the intention of the legislature was to impose punishment, that ends the inquiry” because in such cases a statute will be deemed to be violative of the Ex Post Facto Clause. (Smith v Doe, 538 US 84, 92 [2003].) If it is found that a legislature’s intention, however, was to impose a civil regulatory scheme, a court must determine whether a statute is “so punitive either in purpose or effect as to negate [the state’s] intention to deem it civil.” (Id. [citations and internal quotation marks omitted].) “[OJnly the clearest proof’ will suffice to transform a statute which a legislature intended to establish as a civil provision into a criminal one in violation of the Ex Post Facto Clause. (Id. [citations omitted].)
Intent of the Legislature in Enacting Retroactive Sexually
Motivated Felony Classification
The Smith Court found that a legislature’s expressed preference for a civil or criminal label, the manner in which the statute was codified and the enforcement provisions of the statute were all relevant considerations in the analysis of whether a statute had a punitive purpose. (Id. at 93-96.) In the view of this court, it is clear that the Legislature had two related but distinct purposes in creating “sexually motivated felonies”— one which is clearly criminal and one which is civil. Those two purposes are separable and must be separately considered in the analysis.
*721 First, the statute (L 2007, ch 7) created a new class of “sexually motivated felonies” under the Penal Law and prescribed sentencing rules for such felonies.[2] Those provisions are indisputably criminal. They were not imposed and could not be imposed retroactively. A conviction for a sexually motivated felony may qualify an offender for civil management just as a conviction for any other sex crime may make an offender civil management eligible. But one of the Act’s significant purposes was to create a new class of sex offenders who would be subject to penal sanctions regardless of whether they might also be subject to civil management.
Under the Act, however, an offender’s commission of a “sexually motivated” felony also serves a second purpose. It prescribes a category of non-sex-offense convictions which may make an offender eligible for civil management. It is the application of this second provision which is being challenged here. In the court’s view, the Legislature clearly did not intend that second designation to be criminal. It intended that classification to define which nonsexual felony offenders could be subject to SOMTA.
These dual purposes are consistent with the comprehensive approach embodied in the statute. The Act’s brief statement of its purposes is replete with assertions that both criminal and civil processes must be used together to enhance public safety:
“[Rjecidivistic sex offenders pose a danger to society that should be addressed through comprehensive programs of treatment and management. Civil and criminal processes have distinct but overlapping goals, and both should be part of an integrated approach . . .
“civil commitment should be only one element in a range of responses . . .
“[S]ome of the goals of civil commitment — protection of society, supervision of offenders, and management of their behavior — are appropriate goals of the criminal process as well.” (Mental Hygiene Law § 10.01 [a], [c], [d].)
The fact that the Legislature had dual purposes in creating the sexually motivated felony designation necessarily leads to the rejection of much of the respondent’s argument that the legislative history and provisions of the statute betray an *722 underlying punitive purpose. The respondent argues that multiple references in the bill jacket which accompanied SOM-TA’s passage, which point to the fact that the statute created a new sexually motivated felony crime, support the inference that the Legislature intended that designation to have criminal consequences in all respects. In the court’s view, however, those references simply point out the plain fact that one of the things the Act did was to create a new category of sex crimes.
Respondent argues that the fact that sexually motivated crimes contain a scienter requirement supports the inference that these provisions were intended to impose a criminal sanction. In support of this argument, he points to a statement in the Kansas v Hendricks case that the existence of such a scienter requirement 'is an indication that a statute is criminal in purpose and that the sexually motivated felony designation requires an examination of whether an offender committed a crime “for the purpose of direct sexual gratification.” (Mental Hygiene Law § 10.03 [s]; see Hendricks, 521 US at 362.) In the respondent’s case, any jury considering whether he should be subject to civil management indeed would have to determine whether the respondent had a sexual motivation in committing his previous felonies. That fact, however, in the court’s view is not sufficient to transform a plainly civil provision into a criminal one. It is a necessary consequence of the dual purposes for which the sexually motivated felony provision was enacted. The determination of whether an offender’s previous crime was sexually motivated serves as a screening device to determine which offenders are eligible for civil management. It was not intended as punishment.
Finally, respondent points to a statement in the Senate Memorandum in Support of the Act to urge that the intention of the Legislature was to “retroactively transform the crimes to which Mr. Nelson (and others) [pleaded] guilty into sex offenses that could subject them to ongoing detention.”[3] The cited statement is that “[s]ometimes .... sexually violent conduct cannot be prosecuted as a sex crime per se, but only under other statutes. To take account of such cases, the Act includes a new crime called Sexually Motivated Felony.” (Senate Mem in Support [“New Crime”] of L 2007, ch 7, reprinted in 2007 McKinney’s Session Laws of NY, at 1527.) Respondent contends that this statement demonstrates that the intent of the Legislature was *723 to revisit what it considered to be inadvisable plea bargains and subject offenders who could no longer be subject to additional criminal punishment to additional detention through the retroactive designation of their crimes as sexually motivated felonies. There is nothing in the cited statement, however, in the court’s view, which supports that contention. The memorandum simply recited the rationale for the creation of a new sexually motivated felony crime. Indeed, in the succeeding two sentences of the memorandum (not cited by the respondent here), it is clear that the memorandum discusses the prospective application of the designated felony classification to offenders whose crimes are committed after the Act’s effective date: “This new crime is committed when a person commits one of certain specified underlying felonies for the purpose of sexual gratification . . . [I]t will carry the new, longer periods of post-release supervision [made applicable by the Act to other sex crimes]” (2007 McKinney’s Session Laws of NY, at 1527 [emphasis added]).
Finally, as the respondent acknowledges, the Legislature’s designation of its purpose in enacting the sexually motivated felony classification must be considered in the analysis. It is clear that the Legislature denominated a SOMTA jury’s determination of whether an offender’s previous conviction was sexually motivated as a part of the civil management process. It is contained in a civil statute (the Mental Hygiene Law) as part of what the Legislature designated as a civil proceeding with a potential consequence (civil management), which the United States Supreme Court has held is civil rather than criminal. (See Kansas v Hendricks, supra.) For all of these reasons, in the court’s view, it is clear that the Legislature intended the challenged provision at issue here to be civil rather than punitive. Effects of the Act
In Smith, the Supreme Court said that in considering whether a statute challenged on ex post facto grounds has a punitive effect, the seven factors articulated by the Supreme Court in Kennedy v Mendoza-Martinez (372 US 144 [1963]) provide a useful analytic framework. (538 US at 97.) The Smith Court held that because these factors applied to a variety of constitutional concepts, the factors were “neither exhaustive nor dis-positive.” (Id. [citations omitted].) The Smith Court did hold, however, that the Mendoza-Martinez factors were “useful guideposts” in an inquiry as to whether a statute challenged on ex post facto grounds had a punitive effect. (Id. [citation omitted].) The Mendoza-Martinez factors are:
*724 “Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment — retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.” (372 US at 168-169.)
With respect to the first factor, it is obvious that a person found to be a sex offender in need of civil management suffers from an affirmative disability or restraint. Such a person faces possible lifetime confinement or lifetime strict and intensive supervision and treatment. (See Matter of State of New York v Rashid, 25 Misc 3d 318, 336 [Sup Ct, NY County, July 1, 2009], affd 68 AD3d 615 [1st Dept 2009], lv granted 14 NY3d 711 [2010] [“ ‘(i)nvoluntary civil confinement “may entail indefinite confinement, (which) could be a more intrusive exercise of state power than incarceration following a criminal conviction” ’ ” (quoting Mental Hygiene Legal Serv. v Spitzer, 2007 WL 4115936, *6, 2007 US Dist LEXIS 85163, *21 [SD NY, Nov. 16, 2007], affd sub nom. Mental Hygiene Legal Servs. v Paterson, 2009 WL 579445, 2009 US App LEXIS 4942 [2d Cir, Mar. 4, 2009], quoting Project Release v Prevost, 722 F2d 960, 971 [2d Cir 1983])].) “[F]reedom from physical restraint ‘has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action’ ” (Kansas v Hendricks, 521 US 346, 356 [1997], quoting Foucha v Louisiana, 504 US 71, 80 [1992]). While a finding of “sexual motivation” under the statute does not, in itself, result in such restraint, it serves to make an offender eligible for civil management. The respondent’s crimes in this case make him eligible for civil management only because those crimes are alleged to have been sexually motivated. In the court’s view, the first Mendoza-Martinez factor argues that the challenged provision has a punitive effect.
Similarly, with respect to the second factor, what must be reviewed is not only the sexual motivation finding but the result of that finding. What must be reviewed is whether the imposition of sex offender civil management has historically been regarded as punishment. The respondent and the petitioner analyze this factor differently. Respondent focuses on the fact *725 that the designation of persons as “sex offenders” is stigmatizing and that stigma has historically been imposed as punishment. Petitioner focuses on the fact that civil commitment for purposes of mental health treatment has historically not been considered punishment.[4]
In the court’s view, the historical inquiry which must be made is whether sex offender civil management statutes have historically been regarded as punishment. That history, however, dates back only to the early 1990s. Sex offender civil management statutes certainly share significant attributes with statutes dating back to the eighteenth century which authorized the involuntary confinement of persons “unable to control their behavior and who thereby pose a danger to the public health and safety.” (Hendricks, 521 US at 357 [recounting the history of civil commitment statutes in the United States].) In the court’s view, however, the wave of new statutes which have been enacted over the past 20 years to authorize the confinement and treatment of sex offenders created a new kind of involuntary confinement regime with distinct purposes and provisions.
The United States Supreme Court has clearly held that statutes like the Kansas sex offender civil management statute at issue in Hendricks do “not establish criminal proceedings and that involuntary confinement pursuant to the Act is not punitive.” (521 US at 369.) At least 20 states and the federal government have enacted sex offender civil management statutes.[5] As the Supreme Court held with respect to the Kansas statute, these other statutes have repeatedly withstood attacks that they are punitive rather than regulatory. (See e.g. Young v Weston, 344 F3d 973 [9th Cir 2003] [Washington state sexually violent predator statute is civil in nature and does not violate the Ex Post Facto Clause]; Aruanno v Hayman, 384 Fed Appx 144 [3d Cir 2010] [New Jersey Sexually Violent Predator Act is a civil regulatory regime].) Throughout their brief history, controlling judicial authority has held that sex offender civil management statutes like that at issue here are civil rather than punitive. The second Mendoza-Martinez factor, in the court’s view, argues that the sexually motivated felony designation is not punitive in effect.
*726 With respect to the third Mendoza-Martinez factor: in the court’s view, a finding of sexual motivation “comes into play only on a finding of scienter.” “Scienter” has been defined as “[a] degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission” and is a synonym for “mens rea.”[6] “Mens rea” has been defined as “[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime.” (Id. at 1006.) The determination at issue here does not concern knowledge but motivation. The inquiry, however, is directed solely to the respondent’s internal mental state or “guilty mind” and, in the court’s view, is consistent with the kinds of findings the Mendoza-Martinez Court had in mind when it determined that a scienter requirement is an important indicia of an act’s punitive purpose. This factor, in the court’s view, thus argues that the Act’s effects are punitive.
The Supreme Court in Hendricks analyzed the application of the fourth factor, whether a statute “promote[s] the traditional aims of punishment — retribution and deterrence” with respect to the Kansas civil management law. There, the Court held that the act did “not implicate either of the two primary objectives of criminal punishment: retribution or deterrence.” (521 US at 361-362.) The Court held that the act was not retributive because it did not make prior criminal conduct more culpable. As the Court had done in upholding an Illinois statute permitting the confinement of mentally ill and dangerous persons, it reasoned that evidence of prior criminal conduct was “received not to punish past misdeeds, but primarily to show the accused’s mental condition and to predict future behavior.” (521 US at 362, quoting Allen v Illinois, 478 US 364, 371 [1986].) The fact that the Kansas statute covered persons who had not been found criminally responsible for their alleged crimes was also significant to the Hendricks Court because it tended to show the state did not have a retributive intent. (521 US at 362.) That is also a feature of the New York statute. (See Mental Hygiene Law § 10.03 [g] [2], [3].)
In Hendricks, the Court also held that the civil management statute at issue was not intended as a deterrent because by definition it only covered offenders who were unable to exercise adequate control over their actions and would therefore be unlikely to be deterred by the threat of confinement. (521 US at *727 362-363.) The statutory provision here is somewhat distinguishable from the statute the Hendricks Court considered because that statute did not authorize a retroactive determination of whether an offender’s previous crime was sexually motivated. The principles articulated by the Court in Hendricks, however, in the court’s view, are also applicable here. As was the case under the Kansas statute at issue in Hendricks, the New York Act’s retroactive designation of sexual motivation “is not retributive because it does not affix culpability for prior criminal conduct. Instead, such conduct is used solely for evidentiary purposes, either to demonstrate that a ‘mental abnormality’ exists or to support a finding of future dangerousness.” (521 US at 362.) The Act’s retroactive designation of previous criminal conduct as sexually motivated also, quite obviously, could not possibly have been intended to serve as a deterrent since it may only apply to conduct which preceded SOMTA’s enactment. In sum, this factor argues that the challenged provision is not punitive.
With respect to the fifth factor, the behaviors which are subject to a retroactive sexual motivation finding are indisputably already a crime. A sexual motivation finding can only be made with respect to an offender’s prior conviction for a designated felony. The finding of sexual motivation, in fact, as respondent points out, does not require that an offender engage in any criminal conduct in addition to the conduct for which he was previously found guilty. The finding simply recharacterizes such previous criminal conduct as sexual. This factor argues that the effect of the statute is punitive.
With respect to “whether an alternative purpose to which it [the designation of a prior crime as sexually motivated] may rationally be connected is assignable for it,” in the court’s view, the answer is clearly yes. Respondent acknowledges that the statute’s “ostensible purpose” in this regard is determining whether an offender is eligible for civil management. (Respondent’s motion at 15.) In the court’s view, however, that is not only the statute’s ostensible purpose, it is the statute’s clear and true purpose. There is thus clearly a purpose other than punishment which is assignable to the provision challenged here.
With respect to the final factor — “whether it [the sexually motivated felony designation] appears excessive in relation to the alternative purpose assigned” — in the court’s view, it is not excessive. There are certainly valid policy arguments which *728 might be made that an offender who was previously convicted of a designated felony which was not found to have a sexual component should not have such a motivation retroactively assigned for the purpose of subjecting such an offender to possible civil management. Respondent correctly points out that offenders subject to a retroactive sexually motivated designated felony classification are not literally “sex offenders” because they have not been previously convicted of a sex crime and that the SOMTA statute was directed to protecting the public against “sex offenders.”
The instant case illustrates, however, how an offender who was not previously convicted of a sex offense may nevertheless have engaged in serious sexual misconduct which may be probative of the offender’s mental abnormality. In this case, the State alleges that the respondent repeatedly raped and sodomized the victim of his kidnapping crime, forced her to consume narcotics, beat her and forced her to work as a prostitute. An offender like the respondent (assuming, arguendo, that the allegations the State makes against him are true) would obviously be in a criminal offender category which might be appropriate for civil management, notwithstanding the fact that he had been previously convicted of only kidnapping rather than a sex crime. The mechanism chosen by the Legislature to reach offenders like the respondent is not, in the court’s view, constitutionally excessive. It is, rather, a rational method to capture offenders who have committed sexually motivated crimes and may suffer from a mental abnormality. Thus, in the court’s view, the final Mendoza-Martinez factor argues that the statute is not punitive.
The Mendoza-Martinez factors, of course, were not intended to be applied mechanically. The analysis does not call for a court to simply add up the factors and then determine how many are in each column. In this case, the Court has determined that four of the Mendoza-Martinez factors weigh towards a finding that the statute is not punitive and three point towards the opposite conclusion. A consideration of those factors as a whole, however, further supports the view that the retroactive sexually motivated felony designation is not punitive. SOMTA obviously may result in the restraint of persons covered by the statute. But “the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment.” (Hendricks, 521 US at 363, quoting United States v Salerno, 481 US 739, 746 [1987].) A statute’s “rational connection to a nonpunitive purpose is a ‘[m]ost significant’ factor in our *729 determination that the statute’s effects are not punitive.” (Smith, 538 US at 102, quoting United States v Ursery, 518 US 267, 290 [1996].) Here, in the court’s view, it is obvious that the Legislature rationally designed the retroactive sexually motivated felony designation to provide for the treatment and management of sexual offenders suffering from a mental abnormality for the purpose of protecting public safety.
The fact that a number of the Mendoza-Martinez factors weigh in favor of a finding that SOMTA imposes punishment arises from the fact that the statute has a number of the attributes of a criminal proceeding. It imposes confinement. It applies only to convicted felons. It incorporates many of the protections and procedures of the criminal law. It is designed to protect public safety. But it was also intended by the Legislature to be, and indeed in fact is, an essentially civil procedure. As noted supra, only the “clearest proof’ is sufficient to construe a statute which the Legislature intended as civil into a criminal proceeding. That standard has not been met here. For all of these reasons, the respondent’s motion to dismiss the petition on ex post facto grounds is denied.
Claim That Different Standards of Required Proof of “Sexual Motivation” Depending on the Date of an Offender’s Crime Violate Due Process and Equal Protection
As noted supra, where an offender is alleged to be a sex offender in need of civil management because he committed a sexually motivated felony subsequent to SOMTA’s effective date, the offender can only be eligible for civil management if the sexual motivation was found by a criminal jury by proof beyond a reasonable doubt. Where such a sexual motivation is alleged to have occurred for a designated felony committed prior to SOMTA’s effective date, however, the sexual motivation finding must be made by a civil management jury using the lower standard of clear and convincing evidence. Respondent alleges that this lesser standard of proof for retroactive determinations and the discrepancy between the findings required for crimes committed prior to or after SOMTA’s effective date are a violation of due process and equal protection.
As respondent acknowledges, the identical claim was recently decided by the Fourth Department in Matter of State of New York v Farnsworth (75 AD3d 14 [2010], appeal dismissed 15 NY3d 848 [2010]). In that case, the Court determined that the clear and convincing evidence standard applied by the statute to backward-looking determinations of sexual motivation did not *730 violate either the respondent’s due process or equal protection rights. Farnsworth is the only New York State appellate decision on this topic which has been rendered thus far and this court is bound to follow the Farnsworth holding. For that reason, respondent’s motion to dismiss the petition, because the clear and convincing evidence standard applied to determinations of sexual motivation violates due process and equal protection, is denied.
Claim That Petition Should be Dismissed Because There is no Statute of Limitations Applicable to a Retroactive Sexual Motivation Claim
Finally, respondent claims that a five-year statute of limitations should apply to any determination that an offender’s previous felony conviction was “sexually motivated” just as such a limitations period generally would apply to most prospective determinations under the criminal law to the prosecution of sexually motivated designated felonies. He alleges that the failure to impose such a limitations period violates due process and equal protection. This is not an argument which the Fourth Department explicitly considered in Farnsworth.
Respondent does not indicate whether he believes the absence of a five-year statute of limitations violates procedural or substantive due process. Procedural due process imposes constraints on the procedures through which the government deprives persons of protected liberty or property interests. It requires notice of such potential deprivations and an opportunity to be heard. (Mathews v Eldridge, 424 US 319 [1976].) “Substantive due process,” on the other hand, bars certain governmental actions regardless of their procedural fairness. It prohibits abuses of governmental power which are arbitrary and without “reasonable justification in the service of a legitimate governmental objective.” (County of Sacramento v Lewis, 523 US 833, 846 [1998].)
Respondent’s claims here are that the procedures which would be used to subject him to civil management would be unfair because his felony convictions arose in 1992. He asserts that a fact-finding process which would take place 18 years after his crimes would impair his ability to defend himself and cites many of the well-known reasons for the imposition of statutes of limitations. He points out that memories of these past events will have eroded and that evidence which may have existed at the time of the respondent’s crimes might no longer be available. He further argues that he was not on notice at the *731 time criminal charges against him were brought that he should collect or preserve evidence which might be relevant to a sexual motivation determination. In the court’s view, these claims allege a violation of procedural rather than substantive due process.
The factors which must be analyzed in considering a procedural due process challenge were outlined by the United States Supreme Court in Mathews v Eldridge (424 US 319, 335 [1976]). These factors are:
“First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” (Citation omitted.)
As the Farnsworth Court held in analyzing the respondent’s procedural due process challenge in that case to the use of the clear and convincing evidence standard to establish sexual motivation, “[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause . . . It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.” (75 AD3d at 21 [internal quotation marks omitted].)
There is also a risk of an erroneous deprivation of that interest through the absence of a statute of limitations. As the respondent argues in this case, his ability to defend against allegations that his crimes were sexually motivated would be compromised because he would have to contest and potentially present evidence concerning events which occurred 18 years ago. While that risk is not insignificant, there are also a number of aspects of the procedures which the law provides in such cases that militate against that risk. First, the burden of proving sexual motivation in this case is on the State, not the respondent. Thus, while the respondent would obviously have difficulty defending against allegations which occurred 18 years ago, the State would face an even more significant burden in proving those allegations by clear and convincing evidence.
Second, the ultimate deprivation of liberty under the statute can only occur upon a finding that the respondent currently suffers from a mental abnormality. In cases where an offender is *732 alleged to have committed a sexually motivated designated felony prior to the statute’s effective date, the retrospective designation of such a prior felony as sexually motivated is a necessary prerequisite to such a current mental abnormality finding. But it does not establish that finding. The finding is established only through a determination of the respondent’s current condition. Thus, the risk of an erroneous deprivation of a person’s liberty inherent in the absence of a statute of limitations arises because persons subject to a retroactive sexually motivated felony determination are eligible for civil management. Previous sexual motivation, however, cannot alone establish that the offender currently suffers from a mental abnormality. (See Mental Hygiene Law § 10.07 [d] [a civil management jury must be instructed that an offender’s previous conviction for the commission of a sex offense (including a sexually motivated offense) cannot be used as the sole basis on which to find that he currently suffers from a mental abnormality].)
Third, the retrospective inquiry concerning sexual motivation will occur in a proceeding which will usually involve an analysis of the entire course of the respondent’s life and multiple events which may have taken place in the distant past. Sex offender civil management trials typically include a review of an offender’s psychological, sexual and sexually offending behaviors over the course of many decades. In the court’s view, the fact that a sexual motivation finding will usually be made with the benefit of extensive information about an offender’s behaviors and motivations over the course of his lifetime militates against the risk of an erroneous deprivation of liberty which would arise if only a limited number of facts from a single incident could be considered.
With respect to “the probable value, if any, of additional or substitute.procedural safeguards,” there are certainly provisions the Legislature might have chosen to import into the statute to minimize the risk that an offender would be erroneously found to have previously committed a sexually motivated felony. For example, proof beyond a reasonable doubt could have been required. The Legislature might have chosen to require certain specific kinds of evidence be provided to establish sexual motivation. A statute of limitations which was greater than five years might have been adopted. The Legislature might have chosen to require the State to prove the commission of a previous sex crime, rather than simply a sexual motivation.
Any of these provisions, however, would also have the potential effect of limiting the number of sexually motivated of *733 fenders who currently suffer from a mental abnormality who could be reached by the statute. It could certainly be argued that additional protections and procedures to minimize the risk of an erroneous sexual motivation finding might make for better policy. But the fact that the Legislature might have chosen to write a more narrow statute does not mean that it was constitutionally required to do so.
Finally, the court must consider “the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” The government’s interest here is in protecting the public from sex offenses, including the most serious of those offenses like rape. Protecting public safety is obviously a governmental interest of the highest order. The Legislature has also made it clear over the past two decades through its enactment of a variety of laws that sexual offenses are a particularly heinous form of criminal behavior which warrant a range of punitive sanctions and regulatory requirements which are not applicable to other serious crimes. The State’s interest in protecting the public from sexual offenders who are predisposed to commit sex crimes and have serious difficulty in controlling their sexually offending behavior is obviously a compelling one and must weigh heavily in the due process analysis.
Finally, the fiscal and administrative burdens which would be occasioned by additional or substitute procedures, in the court’s view, are not relevant factors in the analysis here. Additional or substitute procedures would not be costly in the fiscal or administrative sense. As noted supra, they would be costly in the sense that they would potentially limit the number of sex offenders who currently suffer from a mental abnormality who could be reached by the statute.
One final point is that the Legislature is obviously empowered to allow criminal prosecutions which are subject to no statute of limitations at all for some crimes. (See CPL 30.10.) Indeed, one of the very acts which the State alleges was previously committed by the respondent in this case, forcible rape, is not currently subject to any statute of limitations under the criminal law, although it was subject to a five-year statute of limitations at the time the respondent’s crimes were committed. (CPL 30.10 [2] [a].) Given the fact that the Legislature may choose to impose no statute of limitations in criminal cases, it is difficult to understand why it would not be entitled to make the same determination in a civil proceeding like the one here.
*734 The Farnsworth Court, as noted supra, analyzed an equal protection challenge to a retroactive designation of an offender’s previous conviction as sexually motivated in determining that differing standards of proof for prospective versus retroactive sexually motivated felony designations did not violate the Equal Protection Clause. In that ruling, the Court held that SOMTA proceedings interfered with a “fundamental right” because they could result in the physical restraint of an offender. Given this finding, the Court held, the challenged SOMTA restriction would be upheld “only if it is narrowly tailored to serve a compelling state interest.” (75 AD3d at 31.)
The Farnsworth Court essentially addressed the basic equal protection argument raised by the respondent here, although it did so in ruling on a challenge to differing proof standards rather than the differing statutes of limitations applicable to conduct which predated and postdated SOMTA’s enactment. In Farnsworth, the Court held
“Mental Hygiene Law § 10.07 (d) as it applies to those detained sex offenders who were convicted of designated felonies that were sexually motivated and committed before the effective date of article 10 is narrowly tailored to serve the State’s interest. Those individuals are equally as dangerous as those who commit the newly enacted sexually motivated felony. Based on the Ex Post Facto Clause of the US Constitution, however, the State could not have tried and convicted anyone of the sexually motivated felony before it was enacted, nor may it retroactively seek to obtain such a conviction (see generally US Const, art I, § 10 [1]).” (75 AD3d at 31.)
The reasoning of the Farnsworth Court is equally applicable here. Respondent’s equal protection challenge does not merely assert that different procedural rules than the Legislature enacted should be applied to retroactive sexually motivated felony determinations. The assertion is that the respondent should not be covered by the statute at all, because the sexually motivated felony determination was not made within the statute of limitations applicable in a criminal proceeding. With respect to the respondent, in the court’s view, the statute is narrowly tailored to meet a compelling state objective (the protection of the public from dangerous sex offenders) because without the challenged provision, offenders like the respondent would not be covered by the statute at all.
*735 Two other points deserve mention. First, with respect to whether a designated felony prosecution was commenced within the applicable limitations period, the statute does, in fact, treat crimes committed prior to and after SOMTA’s effective date identically. The respondent in this case was previously convicted of kidnapping in the second degree, among other crimes. In order to obtain that conviction, the prosecution had to commence within the applicable limitations periods for those crimes. SOMTA requires a valid conviction for a designated felony crime prosecuted in accordance with the applicable statute of limitations regardless of whether that crime was committed prior to or after SOMTA’s effective date.
There is no statute of limitations applicable to a sexual motivation determination for a designated felony which was committed prior to SOMTA’s effective date. But that is because, for such crimes, that designation has no effect on a respondent’s criminal conviction. It serves only as a screening device to determine which offenders may be eligible for civil management.
Finally the statute is, in fact, limited with respect to how far back in time a “sexually motivated” felony classification can reach. An offender must be in the “care, custody, control or supervision” of a relevant agency like the State Department of Correctional Services or the Division of Parole with respect to a prior designated felony in order to be eligible for civil management. (Mental Hygiene Law § 10.03 [g].) The respondent here clearly meets that criterion. But if the respondent in this case, for example, had finished serving his entire sentence for his designated felony and had not been committed to DOCS for another crime, under the SOMTA statute, the State would not have been entitled to bring a petition in this case because the respondent would not be a “Detained sex offender.” The requirement that an offender meet the definition of a detained sex offender imposes an effective temporal limitation in a wide range of cases on the ability of the State to allege that a prior designated felony was sexually motivated.
Respondent’s claims, in the court’s view, assert valid policy concerns about the manner in which the Legislature has chosen to allow for the retroactive designation of prior convictions for nonsexual offenses as sexually motivated felonies which may result in civil management. In the court’s view, however, those arguments raise policy issues within the Legislature’s province to determine rather than constitutional defects requiring judicial intervention.
*736 For all of the foregoing reasons, respondent’s motion to dismiss the petition is denied.

. Respondent’s motion was denied by this court in a ruling from the bench on October 8, 2010 with an indication that an opinion containing find *717 ings of fact and conclusions of law would follow. The instant decision contains those findings and conclusions.

. See section 29 of the Act, adding new sections 130.91 and 130.92 to the Penal Law.

. See defendant’s motion to dismiss, June 18, 2010, at 10 (hereafter defendant’s motion).

. See respondent’s motion at 12-13; petitioner’s affirmation in opposition to defendant’s motion to dismiss, Aug. 16, 2010, at 9-10 (hereafter petitioner’s affirmation).

. See Association for the Treatment of Sexual Abusers, Civil Commitment of Sexually Violent Predators, Aug. 17, 2010 (available from Association’s Web site).

. Black’s Law Dictionary 1373 (8th ed 2004).