OPINION OF THE COURT
O. Peter Sherwood, J.
Defendants Sprint Nextel Corp. and its wholly-owned subsidiaries, Sprint Spectrum L.P, Nextel of New York, Inc., and Nextel Partners of Upstate New York, Inc. (collectively, Sprint), move, pursuant to CPLR 3211 (a) (5) and (7), to dismiss the complaint in this tax enforcement action.
Background
This case arises out of a qui tarn action pursuant to the New York False Claims Act, State Finance Law § 189. Empire State *514 Ventures, LLC initially commenced the action, pursuant to State Finance Law § 189, essentially alleging that Sprint, mobile telecommunications service providers, failed to collect or pay New York sales taxes on receipts from the sale of certain wireless telephone services. Alter an investigation, plaintiff, the People of the State of New York, by Eric T. Schneiderman, Attorney General for the State of New York, intervened and filed a superseding complaint, also alleging claims under the State Finance Law, as well as claims under the Tax Law and Executive Law. The Attorney General claims, in essence, that Sprint knowingly filed false tax returns and underpaid New York sales taxes on its mobile telecommunications offerings in order to gain an advantage over its competitors.
The superseding complaint includes the following factual allegations, which, on this motion to dismiss, are accepted as true. From 2002 to the present, Sprint sold wireless telephone calling plans to New York customers for a set number of minutes per month at fixed monthly recurring access rates. Customers incur the fixed monthly recurring access charges regardless of whether they actually use all of the available minutes in a given month, or whether they make interstate or intrastate charges. Customers also incur overage charges, on a per-minute basis, for any minutes used in excess of the monthly allotment. Sprint issues monthly invoices, which do not distinguish between interstate and intrastate usage, but rather, include the fixed monthly recurring access charges, any overage charges, and charges for sales taxes.
Beginning in July 2005, Sprint implemented a nationwide program of unbundling its wireless offerings. As such, Sprint began treating part of its fixed monthly access charges for wireless voice services as if they were charges for interstate calls charged on a per-minute basis. The monthly invoices from defendants continued to identify the charges as fixed monthly recurring access charges. However, Sprint did not collect or pay New York sales taxes on the interstate calls. Sprint also submitted monthly and quarterly state sales tax filings reflecting only the amount of sales taxes it collected for intrastate calls. The submissions offer very little insight into the standards Sprint used to identify each component of the unbundled charges.
The superseding complaint alleges that Sprint intentionally avoided more than $100 million in New York sales tax obligations by arbitrarily unbundling its wireless offerings. The complaint also alleges that for the years at issue, the percentage *515 of fixed-rate wireless calling plans on which Sprint did not collect sales taxes ranged from 13.7% to 28.5% of the overall fixed rate. Plaintiff maintains that the allocation between taxable and non-taxable categories not only ignored the applicable sections of the Tax Law, but also was arbitrary because it was not related to any customer’s actual usage.
The first cause of action alleges that Sprint violated State Finance Law § 189 (1) (g) by knowingly making or using false records or statements material to an obligation to pay or transmit money or property to the state and local governments. The second cause of action alleges that Sprint violated State Finance Law § 189 (1) (c) by conspiring to violate State Finance Law § 189 (1) (g). The third cause of action alleges that Sprint violated Executive Law § 63 (12) by repeatedly engaging in fraudulent or illegal activity, including failing to collect and pay sales taxes and submitting false sales tax filings in violation of Tax Law § 1105. The fourth cause of action alleges that Sprint violated article 28 of the Tax Law, specifically Tax Law § 1105 (b) (2), by failing to collect or pay New York sales taxes.
Sprint now seeks to dismiss the complaint for failure to state a cause of action. Sprint also seeks to dismiss as time-barred so much of the third and fourth causes of action as assert claims concerning statements made prior to March 31, 2008.
Discussion
On a motion to dismiss, pursuant to CPLR 3211, the pleading is to be afforded a liberal construction (see CPLR 3026; Leon v Martinez, 84 NY2d 83, 87 [1994]). The court must accept the facts alleged in the complaint as true, accord the plaintiff the benefit of every favorable inference, and determine whether the facts as alleged fit within any cognizable legal theory (Leon v Martinez). The court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint, and “the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one” (id. at 88, quoting Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977]).
The New York False Claims Act, State Finance Law § 189 (1) (g), prohibits any person from knowingly making or using a false record or statement material to an obligation to pay or transmit money or property to the state or a local government. Effective August 27, 2010, the False Claims Act was amended to expressly apply to knowing violations of the New York Tax Law (L 2010, ch 379).
*516 New York’s Tax Law § 1105 (b) (2) imposes a four percent tax on:
“[t]he receipts from every sale of mobile telecommunications service provided by a home service provider, other than sales for resale, that are voice services, or any other services that are taxable under subparagraph (B) of paragraph one of this subdivision, sold for a fixed periodic charge (not separately stated), whether or not sold with other services.”
Here, the superseding complaint alleges in great detail how Sprint implemented a nationwide program of unbundling its mobile telecommunications offerings, treating part of its fixed monthly access charges for wireless voice services as if they were charges for interstate calls charged on a per-minute basis, failing to collect or pay New York sales taxes on the interstate calls, and submitting monthly tax statements only for the taxes collected for intrastate calls. Construed in the light most favorable to plaintiff, the first cause of action sufficiently alleges that Sprint violated State Finance Law § 189 (1) (g), by knowingly making or using a false record or statement material to an obligation to pay New York sales taxes required under Tax Law § 1105 (b) (2), so as to survive a motion to dismiss.
However, Sprint disagrees that the factual allegations in the superseding complaint adequately state a valid claim for relief under State Finance Law § 189 (1) (g). Instead, Sprint contends that its tax collection decisions are justified based on a reasonable interpretation of the various statutes.
Sprint asserts that the plain language of the Tax Law permits it to exclude from sales taxes the portion of its fixed monthly recurring access charges that is attributable to interstate voice services, even when said services are bundled with intrastate services. Sprint maintains that Tax Law § 1105 (b) must be construed in its entirety, including paragraphs (1), (2), and (3), and that when so construed, the plain language of section 1105 (b) excludes interstate voice services from New York sales taxes. Thus, Sprint asserts that the superseding complaint does not sufficiently allege that it knowingly submitted false statements in order to avoid an obligation to pay state taxes on the sale of mobile telecommunications services. Sprint also argues that in any event, its interpretation of the Tax Law is reasonable and, thus, not punishable.
To be sure, a “statute or legislative act is to be construed as a whole, and all parts of an act are to be read and construed *517 together to determine the legislative intent” (McKinney’s Cons Laws of NY, Book 1, Statutes § 97). However, where, as here, the language of a tax statute is unambiguous, the statute should be construed so as to give effect to the plain meaning of the words used (New York State Assn. of Counties v Axelrod, 213 AD2d 18, 24 [3d Dept 1995]). Statutory construction rendering language superfluous is to be avoided (Matter of Branford House v Michetti, 81 NY2d 681, 688 [1993]).
Here, the statutory construction urged by Sprint is inconsistent with the plain language used. Tax Law § 1105 (b) (1) imposes a four percent tax on:
“The receipts from every sale, other than sales for resale, of the following: . . . (B) telephony and telegraphy and telephone and telegraph service of whatever nature except interstate and international telephony and telegraphy and telephone and telegraph service and except any telecommunications service the receipts from the sale of which are subject to tax under paragraph two of this subdivision.”
Thus, section 1105 (b) (1) expressly excludes receipts from telecommunications service that are taxable under section 1105 (b) (2).
Section 1105 (b) (2) imposes the four percent tax on receipts from every sale of mobile telecommunications services, other than sales for resale, that are voice services sold for a fixed periodic charge. The superseding complaint specifically seeks to redress Sprint’s alleged tax avoidance for mobile telecommunications services sold for a fixed periodic charge. Thus, section 1105 (b) (2) must be applied to address plaintiffs claims.
Section 1105 (b) (3) states that “[t]he tax imposed pursuant to this subdivision is imposed on receipts from charges for intrastate mobile telecommunications service of whatever nature in any state if the mobile telecommunications customer’s place of primary use is in this state.” Thus, section 1105 (b) (3) taxes receipts from intrastate mobile telecommunications charges incurred by New York customers while they are in any state. A review of the superseding complaint reveals no factual allegations that require the application of section 1105 (b) (3).
Simply stated, nothing in the plain language of Tax Law § 1105 (b) (1) or (3) addresses plaintiffs allegations that Sprint knowingly avoided New York sales taxes on the sale of mobile telecommunications services for a fixed monthly recurring access charge.
*518 Furthermore, Tax Law § 1111 (Z) states, in part:
“(1) Receipts from the sale of mobile telecommunications service provided by a home service provider shall include ‘charges for mobile telecommunications services.’ Such term shall mean any charge by a home service provider to its mobile telecommunications customer for (A) commercial mobile radio service . . . and (B) any service and property provided therewith.
“(2) With respect to services or property described in subparagraph (B) of paragraph one of this subdivision, internet access service, any mobile telecommunications service which the mobile telecommunications customer originates in a foreign country to the extent included in the fixed periodic charge, any interstate or international telephony or telegraphy or telephone or telegraph service of whatever nature which is not a voice service, and any property or service which is not telephony or telegraphy or telephone or telegraph service of whatever nature, a home service provider shall collect and pay over tax, and a mobile telecommunications customer shall pay such tax, on receipts from any charge that is aggregated with and not separately stated from other charges for mobile teleommunications service. Provided, however, if such home service provider uses an objective, reasonable and verifiable standard for identifying each of the components of the charge for mobile telecommunications service, then such home service provider may separately account for and quantify the amount of each such component charge. If a home service provider chooses to so separately account for and quantify and separately sells any such property or service, then the charge for such property or service shall be based upon the price for such property or service as separately sold.”
Thus, Tax Law § 1111 (Z) expressly requires mobile telecommunications providers to collect and pay state sales taxes on mobile telecommunications services included in a fixed periodic charge, unless the provider uses an objective, reasonable and verifiable standard for identifying each of the components of the charge, in which case, the provider may separately account for and quantify the amount of each such component charge.
Sprint attempts to avoid the mandate in section 1111 (Z) by arguing that section 1111 (Z) is inconsistent with, and thus *519 preempted by, the Federal Mobile Telecommunications Sourcing Act (4 USC § 123 [b]) (the MTSA). The MTSA states, in part:
“If a taxing jurisdiction does not otherwise subject charges for mobile telecommunications services to taxation and if these charges are aggregated with and not separately stated from charges that are subject to taxation, then the charges for nontaxable mobile telecommunications services may be subject to taxation unless the home service provider can reasonably identify charges not subject to such tax, charge, or fee from its books and records that are kept in the regular course of business” (4 USC § 123 [b]).
Federal law preempts state law (1) where Congress has expressly preempted state law, (2) where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or (3) where federal law conflicts with state law (see Pacific Capital Bank, N.A. v Connecticut, 542 F3d 341, 351 [2d Cir 2008]). Conflict preemption occurs when compliance with both federal and state law is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress in enacting the federal law (id.).
There is no apparent conflict between the MTSA and Tax Law § 1111 (l). The MTSA expressly authorizes taxing jurisdictions that do not otherwise subject aggregated mobile telecommunications services to taxation to tax said services, unless the provider can reasonably identify the charges not subject to such tax. As discussed, however, New York’s Tax Law already imposes a four percent tax on aggregated mobile telecommunications services (see Tax Law § 1105 [b] [2]). Furthermore, Tax Law § 1111 (l) requires providers to collect and pay taxes on receipts from the sale of mobile telecommunications services that are aggregated with and not separately stated from other charges, unless the provider uses an objective, reasonable, and verifiable standard for identifying each of the components of the charges. Nothing in the plain language of the above Tax Law provisions presents any obstacle to the accomplishment and execution of Congress’ full purpose and objectives in enacting the MTSA to address jurisdictions that, unlike New York, do not subject aggregated mobile telecommunications charges to taxation.
Moreover, contrary to defendants’ assertion, the superseding complaint satisfactorily alleges that Sprint knowingly *520 submitted false monthly tax statements. The False Claims Act defines the term “knowingly” to mean that “a person, with respect to information:
“(i) has actual knowledge of the information;
“(ii) acts in deliberate ignorance of the truth or falsity of the information; or
“(iii) acts in reckless disregard of the truth or falsity of the information” (State Finance Law § 188 [3] [a]).
The superseding complaint specifically alleges at length that Sprint realized that their approach to unbundling was aggressive and risky, and that their decision to unbundle was motivated by a desire to gain a competitive advantage over other wireless carriers.
The assertion that Sprint’s interpretation of the Tax Law is nevertheless reasonable and, thus, not punishable is also insufficient to warrant dismissal. The criterion on a motion to dismiss is whether the proponent of the pleading has a cause of action (see Wiener v Lazard Freres & Co., 241 AD2d 114, 120 [1st Dept 1998]).
Sprint also argues that claims for statements made before August 2010, when the New York False Claims Act was amended to expressly apply to knowing violations of the Tax Law, violate the Ex Post Facto Clause of the United States Constitution (US Const, art I, § 9, cl 3). The Ex Post Facto Clause prohibits Congress and the States from enacting any law that (1) retroactively imposes a punishment for an act that was not punishable when it was committed; (2) retroactively increases the punishment for a crime after its commission; or (3) deprives one charged with a crime of a defense that was available at the time the crime was committed (United States v Coleman, 675 F3d 615, 619 [6th Cir 2012]). The Ex Post Facto Clause is only implicated by criminal statutes or acts intended to punish (see Cutshall v Sundquist, 193 F3d 466, 477 [6th Cir 1999]).
In order to determine whether a law constitutes retroactive punishment forbidden by the Ex Post Facto Clause, the court must ascertain whether the legislature meant for the statute to establish civil proceedings (Smith v Doe, 538 US 84, 92 [2003]). If the intention of the legislature was to impose punishments, that ends the inquiry (id.). If, however, the court determines that the intent was to enact a civil and non-punitive regulatory scheme, the court must further examine whether the statutory scheme is so punitive, either in purpose or effect, as to negate *521 the State’s intention to deem it civil (see Hudson v United States, 522 US 93, 100 [1997]). In making the latter determination, the court should consider whether the sanction (1) involves an affirmative disability or restraint; (2) has historically been regarded as a punishment; (3) comes into play only on a finding of scienter; (4) promotes the traditional aims of punishment — retribution and deterrence; (5) applies to behavior that is already a crime; (6) may rationally be connected to an alternative purpose; or (7) appears excessive in relation to the alternative purpose assigned (Kennedy v Mendoza-Martinez, 372 US 144, 168-169 [1963]). While these factors are not exhaustive or dispositive, they provide a framework for the analysis (Smith, 538 US at 97). The factors must be considered in relation to the statute on its face (Kennedy, 372 US at 169). Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty (United States v Ward, 448 US 242, 249 [1980]).
State Finance Law § 189 (1) provides, in part, that a finding of liability under the statute may result in a “civil penalty of not less than six thousand dollars and not more than twelve thousand dollars, plus three times the amount of all damages, including consequential damages.” The legislature expressed the objective of the law in the statutory text itself. The express language used indicates the legislature’s preference for a civil label. Thus, the court must now analyze the statutory scheme using the factors set forth in Kennedy to determine whether it is so punitive in purpose or effect as to transform what was intended as a civil remedy into a criminal penalty.
As to the first factor, State Finance Law § 189 (1) (g) imposes no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint (Smith, 538 US at 100). Therefore, this factor weighs in favor of finding a civil purpose.
In addressing the second factor, whether the sanction has historically been regarded as punishment, Sprint relies on another qui tarn action, State of N.Y. ex rel. Grupp v DHL Express (USA), Inc. (19 NY3d 278 [2012]). In that case, the Court of Appeals stated that the imposition of civil penalties and treble damages in section 189 (1) (g):
“evinces a broader punitive goal of deterring fraudulent conduct against the State. That is, instead of compensating the State for damages caused by [the defendant’s] purported scheme and addressing its *522 narrow proprietary interests, the [False Claims Act] would punish and consequently deter such future conduct, thereby promoting a general policy” {id. at 286-287).
However, State of N.Y. ex rel. Grupp v DHL Express (USA), Inc. is unavailing as the inquiry therein was whether the plaintiffs claims pursuant to the New York False Claims Act were federally preempted by the Airline Deregulation Act of 1978 (49 USC § 41713 [b] [1]) and the Federal Aviation Administration Authorization Act (49 USC § 14501 [c] [1]). The Court did not consider whether the New York False Claims Act constitutes retroactive punishment forbidden by the Ex Post Facto Clause. Furthermore, research reveals no case law on that issue.
Historically, courts examining the Federal False Claims Act (FCA) (31 USC § 3729 et seq.), which mirrors the New York False Claims Act, have determined that it is “civil in nature, and that a civil remedy does not rise to the level of ‘punishment’ merely because Congress provided for civil recovery in excess of the Government’s actual damages” (United States v Halper, 490 US 435, 442 [1989]). Furthermore, while the Supreme Court has recognized the imposition of treble damages under the FCA is “essentially punitive in nature” (Vermont Agency of Natural Resources v United States ex rel. Stevens, 529 US 765, 784 [2000]), the Court has also stated:
“[I]t is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives. While the tipping point between payback and punishment defies general formulation, being dependent on the workings of a particular statute and the course of particular litigation, the facts about the FCA show that the damages multiplier has compensatory traits along with the punitive” (Cook County v United States ex rel. Chandler, 538 US 119, 130 [2003] [citations omitted]).
At first glance, an analysis of the third factor, whether the statute comes into play only on a finding of scienter, may indicate a criminal effect of the New York False Claims Act. Specifically, the prohibition in section 189 (1) (g) against any person knowingly making or using a false record or statement material to an obligation to pay or transmit money or property to the state or a local government comes into play only on a finding of scienter. “ ‘Scienter’ has been defined as ‘[a] degree of knowledge that makes a person legally responsible for the *523 consequences of his or her act or omission’ and is a synonym for ‘mens rea’ ” (State of New York v Nelson, 30 Misc 3d 715, 726 [Sup Ct, NY County 2010], quoting Black’s Law Dictionary 1373 [8th ed 2004]). “ ‘Mens rea’ has been defined as ‘[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime’ ” (id.). The statutory ban is consistent with the kinds of findings the Court in Kennedy had in mind when it determined that a scienter requirement is an important indicia of the statute’s punitive purpose.
However, section 189 (1) states that a finding of liability thereunder may result in a “civil penalty” of treble and other monetary damages. The payment of fixed or variable sums of money is a sanction that has long been recognized as civil (see Helvering v Mitchell, 303 US 391, 401 [1938]). Sanctions imposing additions to a tax “are provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer’s fraud” (id.). Thus, the third factor, too, weighs in favor of finding that the New York False Claims Act has a civil purpose.
Turning to the next factor, whether the statute promotes the traditional aims of punishment — retribution and deterrence, the Supreme Court has stated that damages under the similar federal FCA are calculated to provide the government with complete indemnity for the injuries done to it (see United States ex rel. Marcus v Hess, 317 US 537, 549 [1943]). The Court also stated that although the FCA requirement that a wrongdoer make payments acts as a deterrent, which is a punishment mechanism and, thus, a criminal attribute, neither disgorgement nor money penalties have historically been viewed as punishment (see Hudson). Rather, the payment of fixed or variable sums of money is a sanction that has long been recognized as civil (id.). Thus, the fourth factor also weighs in favor of finding that the New York False Claims Act has a civil purpose.
As to the fifth factor, the Tax Law contains provisions prohibiting criminal tax fraud, and detailing actions similar to that proscribed by section 189 (1) (g) of the State Finance Law (see e.g. Tax Law § 1804). The existence of both a civil statute and a criminal statute weighs in favor of finding a civil purpose for section 189 (1) (g).
An analysis of the sixth factor, whether section 189 (1) (g) may rationally be connected to an alternative purpose, also weighs in favor of finding a civil purpose for the statute. As *524 stated, in analyzing the federal counterpart, courts have noted that the damages multiplier of the FCA serves both compensatory and punitive purposes (see Cook County). Treble damages have a compensatory side, serving remedial purposes in addition to punitive objectives (see United States ex rel. Marcus, 317 US at 550). The dual purposes weigh in favor of finding a civil purpose for the law.
The seventh factor, whether section 189 (1) (g) appears excessive in relation to the alternative purpose assigned, seems to weigh in favor of finding a punitive aspect of the statute. The imposition of treble damages would certainly do more than merely compensate the government for its losses. The disproportionality between the potential liability of the defendant and the actual harm to the government reveals an intent to punish past, and to deter future misconduct, not to ameliorate the liability of wrongdoers (see Texas Industries, Inc. v Radcliff Materials, Inc., 451 US 630, 639 [1981]).
However, consideration of all of the Kennedy v Mendoza-Martinez factors warrants a finding that State Finance Law § 189 (1) (g), like its federal counterpart, is not sufficiently punitive in nature and effect as to warrant preclusive application of the Ex Post Facto Clause to Sprint’s alleged conduct prior to August 27, 2010, when the act was amended to expressly apply to knowing violations of the Tax Law. Thus, the branch of the motion that seeks to dismiss the first cause of action is denied.
The second cause of action, which alleges that Sprint violated State Finance Law § 189 (1) (c) by conspiring to violate State Finance Law § 189 (1) (g), must be dismissed. Sprint cannot conspire with its own subsidiaries to violate the False Claims Act (see Barnem Circular Distribs. v Distribution Sys. of Am,., 281 AD2d 576, 577 [2d Dept 2001]).
The third cause of action adequately alleges that defendants violated Executive Law § 63 (12), which provides the Attorney General with a right of action to enjoin another from engaging in “repeated fraudulent or illegal acts or otherwise demonstrating] persistent fraud or illegality in the carrying on, conducting or transact[ing] of business” (see also Matter of State of New York v Ford Motor Co., 136 AD2d 154, 156 [3d Dept 1988]). Construed in the light most favorable to the Attorney General, the superseding complaint satisfactorily alleges that defendants repeatedly engaged in fraudulent and illegal acts by failing to collect and pay sales taxes due and owing, and submitting false sales tax filings to the New York Department of Taxation and Finance in violation of Tax Law § 1105.
*525 Similarly, as discussed, the fourth cause of action sufficiently alleges that Sprint violated Tax Law § 1105 (b) (2) by failing to collect and pay required New York sales taxes.
Sprint asserts that the third and fourth causes of action are time-barred to the extent that they apply to periods before March 31, 2008. CPLR 214 (2) imposes a three-year statute of limitations on any “action to recover upon a liability, penalty or forfeiture created or imposed by statute.” Tax Law § 1147 (b) also imposes a three-year limitations period on tax enforcement actions, “except in the case of a willfully false or fraudulent return with intent to evade the tax.” The statute begins to run when the tax filing is submitted (see Matter of Roebling Liqs. v Commissioner of Taxation & Fin., 284 AD2d 669, 672 [3d Dept 2001]).
Defendants acknowledge that the State Department of Taxation and Finance is currently auditing several defendants’ payment of sales taxes during some of the years at issue, and that as part of the process, some of the defendants signed tolling agreements extending the time for the Department to make a final determination of any sales taxes owed. However, defendants argue that the tolling agreements do not apply to this case since this litigation is not part of the audit process.
On the other hand, the State maintains that the tolling agreements do not limit their application to the audit process and, in fact, gives the Attorney General a referral, pursuant to Tax Law § 1141 (a), to commence an action to collect back taxes and penalties owed for defendants’ sales tax violations.
The submissions do not include the tolling agreements. Nor do the pleadings contain any factual allegations to sustain the timeliness of any of the transactions completed more than three years prior to the commencement of this action (see Zaref v Berk & Michaels, 192 AD2d 346, 348 [1st Dept 1993]). Thus, the third and fourth causes of action must be dismissed as time-barred to the extent that they apply to periods before March 31, 2008.
Accordingly it is ordered that the motion to dismiss is granted to the extent that (1) the second cause of action is dismissed in its entirety; and (2) the claims in the third and fourth causes of action that apply to periods before March 31, 2008 are dismissed as time-barred, and the motion is otherwise denied; and it is further ordered that the remainder of the action is severed and continued.